### Department of Environmental Resources v. Meyersdale Municipal Authority

*Barbara Brandon*, for Department of Environmental Resources.

*Frank Orban, Jr.* and *Frank Lucente*, for appellants.

BROUGHTON, Chairman, March 2, 1973.—This is an appeal by the Meyersdale Municipal Authority from the grant of the strip mining permit to M. F. Fetterolf Coal Company, Inc., for premises in Summit Township, Somerset County, Pa., adjoining the watershed area for the Sand Spring Reservoir of said authority.

The Sand Spring Reservoir is fed by subsurface waters, the source of which is not known. For this reason, the authority contends that the conduct of any strip mining operation in such proximity to the Sand Spring Reservoir watershed poses a threat or risk to the water sources for said reservoir and can possibly adversely affect the quantity and quality of the water supply. It is believed that the threat exists not only from blasting but also from the excavation of ground required for mining and removal of the coal.

The authority serves a large number of customers in the Meyersdale area, including several thousand individuals, the public schools, a community hospital and several industries, so that a substantial public interest is involved in this matter.

## FINDINGS OF FACT

1. M. F. Fetterolf Coal Company, Inc., is a Pennsylvania corporation and the holder of a permit from the Department of Environmental Resources authorizing it to conduct a strip coal mining operation in Summit Township, Somerset County, under Application No. 4072BSM11.

2. Meyersdale Municipal Authority is a municipality authority engaged in the business of providing water to the residents of the Borough of Meyersdale and to some residents in Summit Township, Somerset County, Pa.

3. The authority maintains a water supply reservoir known as the Sand Spring Reservoir which is located on a separate watershed to the east of and adjacent to the watershed on which the mining operation is to be conducted.

4. The area for which a strip mining permit was granted is within 200 feet of the Sand Spring watershed.

5. The exact source of the underground waters which feed the reservoir is presently unknown.

6. Even if drainage from the mining operation could reach the reservoir of the authority, it would not have an adverse effect because the amount of drainage would necessarily be so small compared to the amount of water in the reservoir and also because of the slight difference in alkalinity and iron between the water that could be expected from the mining operation and the water in the reservoir.

7. Surface water and drainage from the mining operation will not reach the authority's reservoir.

8. Immediately below the coal seam in this area is an impervious clay which, if undisturbed, would prevent any subsurface drainage from reaching strata that could result in a flow into the reservoir of the authority.

9. The authority does not know where the sources are for the water entering into its reservoir.

10. The question about whether subsurface drainage from the mining operation can reach the authority's water supply is essentially one of geological determination.

11. Extensive geological work has been done in this area, and the best publication of such work is that of the witness, Dr. Norman Flint, of Pittsburgh, Pa., who published Geology and Mineral Resources of Southern Somerset County of Pennsylvania.

12. All of the strata, including the coal bed, dip in a northwest direction away from the watershed on which the authority's reservoir is located.

13. Under the permittee's plan of drainage, mining will be slightly upgrade and toward the watershed divide so that any water that is intercepted flows into the portion of the mine already excavated. If a mine void were encountered, no drainage would enter the void because of the slope back away from the void. The operator would then seal the void with an impermeable material, probably using the clay material from the pit floor.

14. An expert geologist such as Dr. Norman K. Flint, who testified as to comprehensive geological studies and research as to the geological structure of the subsurface strata at the general area here involved, admits that he cannot be absolutely certain that the water sources of the Sand Spring Reservoir will not be affected, but in his opinion the probability that the water will be affected is extremely low.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the parties and subject matter.

2. M. F. Fetterolf Coal Company, Inc., is presently operating its strip coal mine operation in Somerset County pursuant to a permit issued by the Department of Environmental Resources.

3. There is no evidence that any drainage from the strip mine operation will result in pollution of the authority's reservoir.

4. The department has properly issued a mining permit to the Fetterolf Coal Co.

## DISCUSSION

This case raises the interesting question of whether 100 percent certainty must exist that a coal mining operation will not at some time in the future pollute a nearby municipal water supply before a permit to mine such coal may properly issue.

Stated in these harsh terms, the case does call for considerable reflection. When it is observed, however, that no water supply ever has, or can have, a guarantee such as that sought in this case by appellant, the matter comes to its proper perspective.

To require the carrying of a burden which is known in advance that no one could possibly carry, to insist on proof of something that all parties agree cannot be proven, serves no useful purpose and makes no sense to me. We will not pursue the shortcomings of this position further than to note that, if this requirement were imposed upon Fetterolf Coal Co., then appellant would be in a better position than every other water supplier in this State. It would have an absolute guarantee against all future contingencies no matter how unlikely or improbable that its water supply will for all time remain in its present state. I believe the citizens using appellant's water supply are entitled to great consideration, the benefit of any substantial doubt, and the exercise of extraordinary care to see that their water remains pure.

All of the expert testimony indicates that the determination of risk in this case is essentially a scientific one. We have observed and listened to Dr. Norman K. Flint, a geologist, who is acknowledged to be the authority on the area here in question. It is his opinion that the mining operation cannot, and will not, affect appellant's water supply.

In the final analysis, we are called upon to weigh the risk of harm to the water supply against the property rights of Fetterolf Coal Company. The department is charged with the responsibility to issue permits such as the one here in question. Its personnel are trained to make the kind of decisions reached in this case. Our function is to review those decisions when called upon to do so for reasonableness and legality.

In our view, it would take a very slight, though real, risk of substantial harm to a water supply in order to justify the revocation of a permit to mine coal. However, there has been no proof of peril to appellant's water supply. Questions have been raised, suspicions voiced and possibilities explored, but the testimony which we accept is all to the contrary.

We are, nevertheless, mindful of the fact that the more distance between the operations of Fetterolf and appellant's water supply, the greater becomes the margin of safety. Fetterolf agreed not to carry on any mining operations indicated on the attached map of Moser Strip marked "area not to be strip mined." This area, which is the closest point to appellant's water supply was eliminated by an order of the board of November 13, 1972, from the area authorized to be mined under the permit here in question.

We have concluded that the above-indicated limitation should remain in effect and make the following

## ORDER

And now, March 2, 1973, the grant of a permit under Application No. 4072BSM11 by the department is hereby sustained and the appeal of Meyersdale Municipal Authority is hereby dismissed with the following condition: The Fetterolf Coal Company shall carry out no mining operations beyond a line which is indicated by the darkened area on the attached map and designated as "area not to be strip mined."